UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN THE MATTER OF THE ESTATE OF
GEORGE HOMER TILLMAN III
BY ANTOINETTE TILLMAN,
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE,

          Plaintiff,                     **MEMORANDUM AND ORDER**

          v.                                18-CV-2211 (RPK) (RER)

THE CITY OF NEW YORK, THE NEW
YORK CITY POLICE DEPARTMENT,
SERGEANT THOMAS SORRENTINO,
*Shield #5635*, POLICE OFFICER MICHAEL
RENNA, *Shield #6389*, and POLICE
OFFICER MATEUSZ KRZEMINSKI,
*Shield #29908*, *as Police Officers and
Individually*,

          Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Antoinette Tillman brings this action on behalf of herself and the estate of her deceased husband, George Homer Tillman III. Mr. Tillman was shot and killed when defendant-officers Thomas Sorrentino, Michael Renna, and Mateusz Krzeminski opened fire on him. Ms. Tillman alleges, along with other claims, that defendants used excessive force in violation of 42 U.S.C. § 1983 and New York state law. Defendants have moved for summary judgment. For the reasons stated below, defendants' motion is denied.

## BACKGROUND

      The following facts are taken from the parties' Rule 56.1 Statements and relevant portions of the record and are undisputed unless otherwise noted.

1

The defendant officers worked together as part of a 106th Precinct Conditions Unit team. *See* Defs.' Statement Pursuant to Local R. 56.1 ¶ 1 (Dkt. #48-1) ("Defs.' 56.1"); Pl.'s Statement Pursuant to Local R. 56.1 ¶ 1 (Dkt. #49-1) ("Pl.'s 56.1").

On April 16, 2016, defendants worked the night shift, from 11:15 PM to 7:50 AM. Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2. They left the precinct in two separate cars. Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6. Sorrentino, Renna, and Stallone took one car. Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6. Krzeminski and non-defendant officer John Arnold took the other. Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.

At approximately 1:15 AM, Krzeminski and Arnold observed Mr. Tillman getting into the driver's seat of a car while holding an opened bottle of vodka. Defs.' 56.1 ¶¶ 9-11; Pl.'s 56.1 ¶¶ 9-11. They approached Mr. Tillman and told him that he should not be drinking on the street or driving if he was intoxicated. Defs.' 56.1 ¶ 12; Pl.'s 56.1 ¶ 12. Mr. Tillman turned and handed the bottle of vodka to another man. Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶ 14. When Mr. Tillman turned, the officers say they saw a silhouette of a gun in Mr. Tillman's waistband, but plaintiff does not concede this. Defs.' 56.1 ¶¶ 16-19; Pl.'s 56.1 ¶¶ 16-19.

Krzeminski and Arnold exited their vehicle and tried to verbally engage with Mr. Tillman, but Mr. Tillman fled. Defs.' 56.1 ¶¶ 21-22; Pl.'s 56.1 ¶¶ 21-22. Mr. Tillman ran northbound on 135th Street; Krzeminski and Arnold pursued. Defs.' 56.1 ¶¶ 25-28; Pl.'s 56.1 ¶¶ 25-28. Krzeminski and Arnold say that at some point during the chase, they witnessed Mr. Tillman remove his gun and hold it in his right hand, a fact which plaintiff disputes. Defs.' 56.1 ¶ 29; Pl.'s 56.1 ¶ 29.

Meanwhile, the car containing the other officers had pulled up to the scene just before Mr. Tillman took off running. Defs.' 56.1 ¶¶ 33-39; Pl.'s 56.1 ¶¶ 33-39. Renna, Sorrentino, and Stallone exited their vehicle and began pursuing Mr. Tillman. Defs.' 56.1 ¶ 41; Pl.'s 56.1 ¶ 41.

2

Upon seeing the other officers, defendants say that Arnold and Krzeminski shouted that Mr. Tillman had a gun, but plaintiff does not concede this. Defs.' 56.1 ¶¶ 42-43; Pl.'s 56.1 ¶¶ 42-43.

Once Mr. Tillman reached 116th Avenue, he turned and began running westbound. Defs.' 56.1 ¶ 44; Pl.'s 56.1 ¶ 44. Defendants claim—but plaintiff disputes—that all five defendants saw Mr. Tillman running with a gun in his right hand. Defs.' 56.1 ¶ 45; Pl.'s 56.1 ¶ 45.

At this point, the parties' accounts diverge further. Defendants claim that they yelled for Mr. Tillman to "drop the gun" and "get down." Defs.' 56.1 ¶ 45. They allege that Mr. Tillman refused and continued running. *Id.* ¶ 48. They allege that he then turned to his left—with his gun still in his right hand—and pointed the gun at Krzeminski. *Id.* ¶ 49.

Plaintiff disputes that Mr. Tillman possessed a firearm. Pl.'s 56.1 ¶ 16. Plaintiff also denies that Mr. Tillman even turned towards officers, much less aimed a gun at them. *Id.* ¶¶ 48-49. Plaintiff relies upon audio-recorded statements of a third-party eyewitness, Leroy Burt. *Ibid.*; *see* Recording of Leroy Burt's Conversation with the Force Investigation Division, Defs.' Ex. O (audio recording) (Dkt. #51) ("Burt Interview"). Mr. Burt said he was looking down from his apartment above the street and "saw everything." Burt Interview 3:55-4:05. Mr. Burt says that he did not see Mr. Tillman turn towards the officers but instead saw Mr. Tillman begin to walk away from the officers. *Id.* at 4:15-4:45, 5:40-50. He also said, "I didn't see a gun." *Id.* at 5:48-55.

There is no dispute that defendants opened fire on Mr. Tillman, killing him. *See, e.g.*, Defs.' 56.1 ¶¶ 52, 58, 73, 77, 143; Pl.'s 56.1 ¶¶ 52, 58, 73, 77, 143.

A black .40-caliber firearm was recovered from the scene. Defs.' 56.1 ¶ 144; Pl.'s 56.1 ¶ 144. The gun was loaded, with one bullet in the chamber. Defs.' 56.1 ¶¶ 145-46; Pl.'s 56.1 ¶¶ 145-46. Mr. Tillman's DNA was on the gun. Defs.' 56.1 ¶ 146; Pl.'s 56.1 ¶ 147.

Plaintiff filed the operative complaint on November 30, 2018. *See* Am. Compl. (Dkt. #14). Setting aside withdrawn claims, *see* Dkt. #43 at 4, the complaint raises claims of "wrongful death," including as a result of "unwarranted physical force" and the deprivation of due process of law; negligence in violation of New York law; violations of the First, Fourth, and Eighth Amendments under Section 1983; and assault and battery in violation of New York law. Am. Compl. ¶¶ 49-81.

Construing these claims as all centered on "excessive deadly force under 42 U.S.C. § 1983" and "corresponding claims under New York state law," arising out of the shooting of Mr. Tillman, defendants have moved for summary judgment. Defs.' Mem. of L. in Support of Mot. for Summary J. 1, 20-25 ("Defs.' Mem.") (Dkt. #48); Defs.' Mot. for Summary J. (Dkt. #47).

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid*. The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, courts consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). Courts view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citation, internal quotation marks, and alterations omitted).

## DISCUSSION

Defendants' motion for summary judgment is denied. Defendants argue that the Court should exclude from consideration under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), testimony from plaintiff's expert witness that Mr. Tillman was shot and killed when he was lying on the ground, *see* Defs.' Mem. 7-20. And they argue that with that testimony excluded, defendants are entitled to summary judgment because any reasonable jury would conclude that officers shot Mr. Tillman only after he turned toward them with a gun in his hand. *See ibid.* As explained below, genuine disputes of material fact preclude summary judgment even if the conclusions of plaintiff's expert are set aside.

Whether officers used excessive force depends on whether their use of force was "'objectively reasonable' in light of the facts and circumstances confronting" them. *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). This test balances "the nature and quality of the intrusion" against "the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks omitted). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the

5

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ibid*. Under those principles, the Second Circuit has held that an officer may use deadly force to stop a fleeing suspect if and only if the "officer had probable cause to believe that the individual posed a significant threat of death or serious physical injury to the officer or others." *Callahan v. Wilson*, 863 F.3d 144, 152 (2d Cir. 2017) (citing *Rasanen v. Doe*, 723 F.3d 325, 334 (2d Cir. 2013)).

Qualified immunity shields officers from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (internal quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Second Circuit has held that the principle that deadly force may only be used when officers have probable cause to believe that an individual posed a significant threat of death or serious physical injury is a clearly established one. *Callahan*, 863 F.3d at 152.

Under these principles, defendants are not entitled to summary judgment even if the conclusions of plaintiff's expert are disregarded. Defendants concede that under *Callahan* and related Second Circuit authority, it was clearly established that officers could not have shot a fleeing Mr. Tillman if he did not have a gun in his hand. September 23, 2022 Oral Argument Transcript 6:15-6:23. And while the defendants assert that Mr. Tillman had turned toward the officers while wielding a gun, a reasonable jury could conclude otherwise based on the account of eyewitness Leroy Burt. Mr. Burt stated that Mr. Tillman did not have a gun in his hand. Burt

6

Interview 5:48-55.  He also said that Mr. Tillman did not turn towards the officers; instead, Mr. Tillman went from running away to walking away.  *Id.* at 4:15-4:45, 5:40-50.  A jury crediting that testimony could conclude that officers shot a fleeing Mr. Tillman under circumstances that defendants concede would have violated clearly established law.

In response, defendants urge the Court to ignore Mr. Burt's testimony as unsworn hearsay. *See* Defs.' Mem. 23.  But "[i]t is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." *Perpall v. Pavetek Corp.*, No. 12-CV-0336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) (citation and internal quotation marks omitted); *see Kee v. City of New York*, 12 F.4th 150, 170 (2d Cir. 2021); *Young v. Cabrera*, No. 18-CV-3028 (RPK) (ST), 2020 WL 7042759, at *7 (E.D.N.Y. Nov. 30, 2020).  Mr. Burt has submitted to at least two voluntary interviews about Mr. Tillman's shooting, *see* Burt Interview; Queens Cnty. D.A. Office Memo, Defs.' Ex. P 40-41 (Dkt. #48-15), and defendants have not offered specific reasons "to believe that plaintiff[s] will be unable to call" Mr. Burt at trial, *Young*, 2020 WL 7042759, at *7.  Accordingly, Mr. Burt's testimony is properly considered at summary judgment.

Defendants also contend that Mr. Burt's statements are not necessarily inconsistent with their own version of events.  *See* Defs.' Mem. 23-24; Defs.' Reply Mem. of L. in Support of Mot. for Summary J. 7-9 (Dkt. #50) ("Defs.' Reply").  In particular, defendants maintain that the mere fact that "Mr. Burt did not actually see Mr. Tillman holding a gun does not equate to Mr. Tillman not having one," and they suggest Mr. Burt simply failed to see a "black" gun in the "pitch black" darkness.  Defs.' Reply 8.  But Mr. Burt told investigators that he "saw everything," *see* Burt Interview 3:55-4:05*,* and that he neither saw a gun in Mr. Tillman's hands nor saw him turn toward the officers, *see* Burt Interview 4:15-4:45, 5:40-55.  While a jury might be unpersuaded by that

7

testimony, it would be inappropriate for the Court to resolve the conflict between these accounts at the summary-judgment stage. *See Tracy*, 623 F.3d at 95; *McClellan*, 439 F.3d at 144. Accordingly, genuine disputes of material fact preclude summary judgment.

## CONCLUSION

Defendants' motion for summary judgment is denied.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 28, 2022
       Brooklyn, New York