UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

ANTOINETTE TILLMAN, *individually and as administratrix of the Estate of George Homer Tillman III*,

           v.

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, SERGEANT THOMAS SORRENTINO, *Shield #5635*, POLICE OFFICER MICHAEL RENNA, *Shield #6389*, POLICE OFFICER KENNETH STALLONE, *Shield #15897*, and POLICE OFFICER MATEUSZ KRZEMINSKI, *Shield #29008*, *as Police Officers and Individually*,

           Defendants.

-----------------------------------------------------x

**MEMORANDUM AND ORDER**
18-CV-2211 (RPK) (JAM)

RACHEL P. KOVNER, United States District Judge:

    Defendants in this case involving a fatal police shooting have moved *in limine* to preclude the testimony of plaintiff's forensic ballistics expert, David Balash. *See* Defs.' Mem. of L. in Supp. of Mot. in Limine ("Defs.' Mot. in Limine") 5–16 (Dkt. #69-1). Following a *Daubert* hearing, the Court now denies defendants' motion as it relates to Mr. Balash's conclusions regarding the trajectories of the bullets fired at the decedent. Mr. Balash's opinions regarding the maintenance of the scene of the shooting not included in his expert report, however, are precluded.

**PROCEDURAL HISTORY**

    The Court assumes the parties' familiarity with the factual and procedural history of this excessive force case. Plaintiff has provided notice that she will call Mr. Balash as a forensic ballistics expert at trial. In his expert report, Mr. Balash criticized several conclusions reached by

1

Dr. Kristen Landi, the medical examiner who conducted the autopsy of the decedent, George Tillman. *See* Balash Expert Report, Ex. A 3–15 (Dkt. #69-6). In particular, he disagrees with Dr. Landi regarding the source and trajectories of various bullets that struck Mr. Tillman. *Ibid.*

Defendants have moved to preclude Mr. Balash's expert testimony. *See* Defs.' Mot. in Limine 5–16. On September 23, 2024, defendants' motion was granted in part—specifically, Mr. Balash was precluded from testifying as to the results of a test live firing exercise he witnessed, from which he attempted to ascertain the position of the firing officers by marking the locations where spent shell casings hit the ground. *See* Sept. 23, 2024 Hr'g Tr. 13:13–16:9. The Court reserved decision on the core of Mr. Balash's report—his opinions regarding the trajectories of the various bullets that struck Mr. Tillman—pending a *Daubert* hearing.

At the *Daubert* hearing, Mr. Balash testified as to the bases for those opinions. *See* Oct. 18, 2024 Min. Entry & Order. He also opined, for the first time, that officers failed to properly maintain the scene of the shooting surrounding Mr. Tillman's body during their investigation. *See* Oct. 18, 2024 *Daubert* Hr'g Tr. 64:14–22. He described his conclusions as being based on videos disclosed by the defendants to plaintiff after discovery had closed, though he explained that those videos likely would not have affected his core conclusions. *See id.* at 41:14–45:15, 64:14–66:16.

Following the hearing, the parties submitted letters supplementing their motion *in limine* briefing. *See* Defs.' Supp. Ltr. (Dkt. #93); Pl.'s Resp. to Defs.' Supp. Ltr. (Dkt. #94). The balance of defendants' motion to preclude the testimony of Mr. Balash is now ready for decision.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if four conditions are met: "(a) the expert's scientific, technical, or other specialized

2

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A party seeking to admit expert testimony under Rule 702 "must establish admissibility by a preponderance of the evidence." *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 397 (S.D.N.Y. 2019) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).

Under Rule 702, the court must ensure that the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *accord United States v. Willis*, 14 F.4th 170, 185 (2d Cir. 2021). That "gatekeeping role" requires the court to "consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quotation marks omitted) (quoting Fed. R. Evid. 702); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding that courts have the same "gatekeeping" role with respect to "technical" and "other specialized" knowledge). Factors that bear on reliability include whether a theory or technique "can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the technique's "known or potential rate of error," the "existence of standards controlling the technique's operation," and

3

"general acceptance" of the technique or theory in the relevant scientific community. *Amorgianos*, 303 F.3d at 266 (quoting *Daubert*, 509 U.S. at 593–94).

In short, the court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* at 267. The court's analysis "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id.* at 266. However, "only serious flaws in reasoning or methodology will warrant exclusion." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos*, 303 F.3d at 267). For example, expert testimony should be excluded as unreliable if the testimony "is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC, 571 F.3d 206, 213–14 (2d Cir. 2009) (citation and quotation marks omitted). Other deficiencies in the expert's assumptions go to the testimony's "weight, not . . . admissibility." *Ibid.* (citation omitted).

## DISCUSSION

Defendant's motion seeking to preclude Mr. Balash from offering his opinion about the source and trajectories of bullets is denied, but Mr. Balash is precluded from offering expert testimony regarding the manner in which officers maintained the scene of the shooting.

Mr. Balash's years of experience examining shooting victims and X-rays qualifies him as an expert to dispute Dr. Landi's conclusions regarding the trajectories of the bullets fired at Mr. Tillman. "In the Second Circuit, courts have construed the inquiry into an expert's qualifications with an eye towards the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing

4

the traditional barriers to "opinion" testimony.'" *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 427 (S.D.N.Y. 2015) (quoting *Daubert*, 509 U.S. at 588–89). "Qualification as an expert is viewed liberally and may be based on 'a broad range of knowledge, skills, and training.'" *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 172 (quoting *In re TMI Litig.*, 193 F.3d 613, 664 (3d Cir. 1999)). An expert's "practical experience" can "qualify as 'specialized knowledge'" under Rule 702. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (quoting Fed. R. Evid. 702).

As relevant here, Mr. Balash has extensive practical experience examining shooting victims. He has worked in the field of forensic ballistics for over fifty years, first at various positions within the Michigan Department of State Police, then as an independent forensic consultant. *See* Balash Expert Report, Ex. B 1. Over this time, he has "examined hundreds of shooting victims at crime scenes, autopsies, hospitals and funeral homes" and has "us[ed] and interpret[ed] X-rays at crime scenes, autopsies, and hospitals." Balash Expert Report, Ex. A 2. Though defendants argue that Mr. Balash's "professional experience consists entirely of working in law enforcement" and that he has "no training, education or work experience in the field of medicine," Defs.' Mot. in Limine 6, defendants do not explain why Mr. Balash's practical experience is insufficient to qualify as specialized knowledge regarding gunshot trajectories. Nor do they explain why a medical degree is required to qualify as an expert in this field.

With respect to Mr. Balash's criticism of Dr. Landi's conclusion about the trajectory of bullet "A," Mr. Balash's opinion falls within the range of what *Daubert* and Rule 702 permit. In his report, Mr. Balash objects to Dr. Landi's conclusion that bullet "A" entered Mr. Tillman's skull, "str[uck] the inner table of the skull with associated fractures of the right middle fossa of the base of the skull and change[d] direction upward and to the left to the right parietal and frontal

5

lobes." Balash Expert Report, Ex. A 15. He opines that "[b]ullets do not change directions to travel back along the same or virtually the same path without something extremely forceful causing that movement." *Ibid.* He concludes that, accepting Dr. Landi's autopsy findings as true, "[t]he only force capable of that change of direction would be a solid hard mass preventing the bullet in question from exiting the skull in the first place" and that "Mr. Tillman's head had to have been against the pavement to explain this bullet's flight path." *Ibid.* At the *Daubert* hearing, Mr. Balash clarified that he was *not* opining that Mr. Tillman's head was, in reality, laying against the pavement when bullet "A" was fired—only that that was the only explanation consistent with Dr. Landi's autopsy notes, which he considers flawed. *See* Oct. 18, 2024 *Daubert* Hr'g Tr. 47:22–52:22.

Of course, "even otherwise qualified experts may not simply offer conclusory opinions." *Jaquez*, 104 F. Supp. 3d at 427 (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) and *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir.2000)). Instead, an expert "must explain how and why he reached his conclusion, and courts do not have to credit opinion evidence connected to data 'only by the *ipse dixit* of the expert.'" *Prohaska v. Sofamor*, 138 F. Supp. 2d 422, 437–38 (W.D.N.Y. 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Here, Mr. Balash's testimony at the *Daubert* hearing has satisfied the Court that he reached his conclusions about how bullets behave within the body via reliable evidence and methods. Mr. Balash testified that he based his opinion—that "[b]ullets do not change directions to travel back along the same or virtually the same path" naturally within the body—on his accumulated experience examining hundreds of autopsies of shooting victims involving bullets of various calibers. Oct. 18, 2024 *Daubert* Hr'g Tr. 55:17–22. Mr. Balash may form his expert opinions via inferences from his extensive practical experience, and his failure to cite scientific

6

studies regarding bullets' behavior within the body does not render his opinion inadmissible. *See Nicholas v. Bratton*, 376 F. Supp. 3d 232, 290 (S.D.N.Y. 2019). Concerns about the weight or credibility of Mr. Balash's testimony are properly reserved for cross-examination.

Similarly, Mr. Balash's testimony opinions regarding other bullet wounds in Mr. Tillman's body meet *Daubert*'s reliability threshold. Mr. Tillman's testimony established that his inferences about bullet trajectories from the shape of the entry wounds, debris found on the decedent's body around the entry wounds, and condition of the recovered bullets were reliably founded on his extensive history investigating shooting victims and crime scenes.

With respect to Mr. Balash's opinions articulated in his expert report on the propriety of the post-shooting investigation and evidence collection conducted by the NYPD and Dr. Landi, as the Court indicated at the September 23 conference, Mr. Balash may testify as to the specific criticisms he expressed in his report and at the *Daubert* hearing regarding how Dr. Landi's autopsy procedure was conducted, so long as those criticisms inform his other opinions about why Dr. Landi's conclusions regarding the sources and trajectories of the fired bullets are incorrect or suspect. Criticisms of the NYPD and Dr. Landi that do not bear on these conclusions, in contrast, are not relevant. Sept. 23, 2024 Hr'g Tr. 16:16–18; *see White v. Gerardot*, No. 05-CV-382, 2008 WL 4238959, at *6–7 (N.D. Ind. Sept. 10, 2008) (excluding Mr. Balash's testimony critiquing the motives behind a post-shooting investigation).

Finally, Mr. Balash's opinions regarding how officers should have maintained the scene of the shooting for purposes of evidence preservation are precluded. If the observations in the videos affected Mr. Balash's opinions, he could have supplemented his expert report anytime in the year since the plaintiff received them. *See* Oct. 18, 2024 *Daubert* Hr'g Tr. 70:22–72:6; Fed. R. Civ. P. 26(e). Permitting him to testify as to a brand-new opinion not contained in his report on the eve

7

of trial would run afoul of Federal Rule of Civil Procedure 26(a)(2)(B). *See Camarata v. Experian Info. Sols., Inc.*, No. 16-CV-132 (AT) (HBP), 2018 WL 1738335, at *1 (S.D.N.Y. Mar. 5, 2018).

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion *in limine* to preclude Mr. Balash's expert opinions about Dr. Landi's conclusions regarding the trajectories of bullets fired at Mr. Tillman. However, Mr. Balash is precluded from offering opinions about the maintenance of the scene of the shooting that were not contained in his expert report.

SO ORDERED.

                                         /s/ Rachel Kovner
                                         RACHEL P. KOVNER
                                         United States District Judge

Dated: November 7, 2024
        Brooklyn, New York